674 F.2d 722
 UNITED STATES of America, Appellant,
v.
47.14 ACRES OF LAND, MORE OR LESS, SITUATE IN POLK COUNTY,
STATE OF IOWA; and Polich Enterprises, Inc.;
Hallett Construction Company; State of
Iowa, Appellees.
 No. 81-1627.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 15, 1981.
Decided April 1, 1982.
 
 James R. McManus, Des Moines, Iowa, for appellee, Polich Enterprises, inc.
 Lee H. Gaudineer, James R. Austin, Jr., Craig V. Schrader, Des Moines, Iowa, for appellee Hallett Const. Co.
 Anthony C. Liotta, Acting Asst. Atty. Gen., Carol E. Dinkins, Asst. Atty. Gen., Washington D. C., Roxanne Barton Conlin, U.S. Atty., Christopher D. Hagen, Asst. U.S. Atty., Des Moines, Iowa, Jacques B. Gelin, Claire L. McGuire, Attys., Dept. of Justice, Washington, D. C., for appellant.
 Before BRIGHT, Circuit Judge, GIBSON, Senior Circuit Judge, and LARSON, Senior District Judge.*
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 The United States appeals from an award of $442,000 for appellees in a condemnation case. Because the award is unsupported by the record, our affirmance of the judgment of the district court is conditioned on appellees' agreeing to a remittitur in the amount of $169,934; otherwise, a remand for a new trial is ordered.
 
 I. Background
 
 2
 On December 20, 1978, the United States filed a complaint and a declaration of taking in the United States District Court for the Southern District of Iowa to condemn a tract of land owned by appellee Polich Enterprises, Inc. (Polich) consisting of 32.4 acres. The tract is a part of a larger piece of land owned by Polich, consisting of 137.5 acres. In 1971 Polich had leased the entire property to appellee Hallett Construction Company (Hallett) for a period of ten years with an option to extend the lease for one more year and an option to renew for another ten years. The property has an ongoing soil, sand, and gravel extraction business operated by Hallett under an agreement to pay a royalty to Polich. The condemned acreage was taken in connection with the Saylorville Lake project, as part of a flood control plan for the lower Des Moines River Valley.
 
 
 3
 On June 27, 1979, the district court appointed a commission to determine the issue of just compensation pursuant to Fed.R.Civ.P. 71A(h). The trial before the commission began on June 9, 1980. Polich presented two appraisers who testified as to the value of the subject property. They both used the "income capitalization approach," which is the capitalization of the income stream of a particular piece of property. Their estimates of just compensation were $481,000 and $540,231. The Government presented two appraisal witnesses who did not rely on the income approach and gave estimates of $25,000 and $65,000.
 
 
 4
 On September 19, 1980, the commission issued a report finding that just compensation should be awarded in the amount of $442,000. On October 29, 1980, the district court remanded the action to the commission because of the way the appraisers computed the income stream from the property and because the commission failed to consider comparable sales. On January 8, 1981, the commission filed an amended report, but it adhered to its previously recommended award of $442,000. On April 9, 1981, the district court adopted the amended ruling of the commission, and this appeal followed.
 
 II. Scope of Review
 
 5
 First we note the proper scope of review in a condemnation case. If the condemnation commission distinctly marks the path it follows in making a compensation award, and if the district court adopts the commission's report, the court of appeals must determine whether the report, as adopted by the court, is clearly erroneous. United States v. 9.20 Acres of Land, 638 F.2d 1123, 1126 (8th Cir. 1981). See United States v. Merz, 376 U.S. 192, 199, 84 S.Ct. 639, 643, 11 L.Ed.2d 629 (1964); Fed.R.Civ.P. 53(e)(2). "(A) finding of fact is only deemed clearly erroneous if it is not supported by substantial evidence, if it proceeds from an erroneous conception of the applicable law, or if on a consideration of the entire record the appellate court is left with the definite and firm conviction that a mistake has been made." Southern Illinois Stone Co. v. Universal Engineering Corp., 592 F.2d 446, 451 (8th Cir. 1979) (citations omitted). Generally, a just compensation award will not be disturbed if it falls within the extremes of the adverse parties' opinion testimony. 9.20 Acres, 638 F.2d at 1126. However, this does not eliminate the requirement that the commission cannot simply make conclusory findings. The commission must reveal its reasoning. Merz, 376 U.S. at 198-99, 84 S.Ct. at 643.
 
 III. Measure of Just Compensation
 
 6
 After reviewing the record, we conclude that the district court should have rejected the report of the commission as being clearly erroneous. We believe the award is too high; it goes considerably beyond the boundaries of just compensation. The commission made assumptions in calculating the award for which there was no record evidence.[1]
 
 
 7
 The burden of proving the value of condemned land rests upon the property owner (condemnee). United States ex rel. Tennessee Valley Authority v. Powelson, 319 U.S. 266, 273, 63 S.Ct. 1047, 1051, 87 L.Ed. 1390 (1943). The proper measure of just compensation when there is a taking of a part of a parcel of land is the difference between the fair and reasonable market value of the parcel immediately before the taking and the fair and reasonable market value of the remainder. 9.20 Acres, 638 F.2d at 1127; United States v. 91.90 Acres of Land, 586 F.2d 79, 86 (8th Cir. 1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979). Market value can be shown best by comparable sales. United States v. 421.89 Acres of Land, 465 F.2d 336, 338 (8th Cir. 1972). When there are no comparable sales, market value must be estimated. Olson v. United States, 292 U.S. 246, 257, 54 S.Ct. 704, 709, 78 L.Ed. 1236 (1934). One permissible method of estimating the value of land with mineral interests is the income capitalization method, in which the income stream from the sale of minerals over a number of years is capitalized in terms of present worth. United States v. 1,629.6 Acres of Land, 360 F.Supp. 147, 151 (D.Del.1973), rev'd in part on other grounds, 503 F.2d 764 (3d Cir. 1974); Annot., 40 A.L.R. Fed. 656, 695 (1978); see United States v. Whitehurst, 337 F.2d 765, 776 (4th Cir. 1964).
 
 
 8
 As noted in Whitehurst, the capitalization of income method may be appropriate in certain cases, but where such method is used all of the factors that must necessarily be taken into account should be established by proper evidence. Where several of the elements or factors relied on by the commission are without objective evidential support, that method is faulty and can obviously lead to unfounded and enhanced valuations. Again, it appears clear that comparable sales are the best evidence of the value of condemned land, which sales on the whole reflect the principle of a willing seller and a willing buyer concluding arms-length negotiations. The income capitalization method is justified mainly when better evidence is not available. Great care must be taken, or such valuations can reach wonderland proportions. It is necessary to take into consideration manifold and varied factors, like future supply and demand, economic conditions, estimates of mineral recoverability, the value of currency, changes in the marketplace, and technological advances. Many of these factors are impossible to predict with reasonable accuracy.
 
 
 9
 In the instant case, the commission found there were no comparable sales and credited the testimony of the witnesses who used the income capitalization approach, who were the witnesses for the appellees. The commission discredited the testimony of the Government witnesses, because they assumed a best use of the land different from the best use found by the commission. The commission award of $442,000 was slightly below the appraisals of appellees' witnesses. One of the experts, Murray Work, had recommended an award of $480,000. He had calculated the present worth of the entire tract, assuming all of the materials would be extracted in sixteen years. He made the same calculation on the remainder, and assumed the materials could be depleted from the remainder in fourteen years. He subtracted the present value of the remainder from the present value of the entire tract, and came up with his $480,000 figure. A second expert for the appellees, Tom Richards, used the same approach to find that the taking decreased the value of the entire parcel by $540,231. His estimate was higher than Work's because he used different figures for the discount rate and for the amounts of extractable materials on the property.
 
 
 10
 After reviewing the entire record, we are left with the definite and firm conviction that a mistake has been made. First, the commission gave no weight to the "best evidence," comparable sales. A 212-acre tract near the subject property was sold in 1976 for $4,700 per acre. Trial Transcript at 287. In the instant case the commission awarded $13,600 per acre. The commission was clearly under no duty to adopt the $4,700-per-acre figure. However, in light of the fact that comparable sales are the best evidence of market value, and the condemnees offered no comparable sales evidence, the commission should have given some consideration to this sale.
 
 
 11
 Furthermore, appellees' experts made key assumptions in using the income capitalization approach which were unsupported by the record evidence and the commission appeared to rely[2] on these assumptions. When a factfinder bases its finding on the opinion of an expert whose reasons are without support in the record, the reviewing court should reject as clearly erroneous the finding based on such testimony. United States v. Certain Interests in Property, 296 F.2d 264, 268 (4th Cir. 1961); see United States v. Hilliard, 412 F.2d 174, 177 (8th Cir. 1969). Both of appellees' appraisers based their conclusions on the assumption that the rate of extraction would increase dramatically, tripling or quadrupling. There was no evidence to support this assumption, and therefore we must reject the commission's findings.
 
 
 12
 Work calculated the before-taking value by assuming there were twelve million tons of soil, sand, and gravel on the entire tract and all of it could be extracted in sixteen years. Trial Transcript at 177. This would require an average extraction of 750,000 tons per year. He assumed it would take fourteen years to extract the 8,801,000 tons on the remainder, or an average of 629,000 tons per year. Id. at 200. Tom Richards also assumed that it would take sixteen years to extract all the materials from the entire tract and fourteen years to extract all the materials from the remainder. Id. at 211, 240. He used different estimates for the amount of materials on the property, and with those estimates the materials would have to be extracted at the rate of 687,874 tons per year for the entire tract, and 557,699 tons per year for the remainder. Id. at 216, 240. According to another of appellees' witnesses, during the three years prior to the taking, the average extraction was 165,000 tons per year. Id. at 141. Even in the last year before the taking, only 192,595 tons were removed. Hallett was operating eighty of the 168 hours in a week to achieve this level of production. Transcript on Remand at 126. There was not support in the record for the experts' assumptions that production would triple or quadruple. Work explained that Hallett had given him the sixteen year figure, Trial Transcript at 195, and Richards testified that his sixteen year figure came from Hallett's estimate and his own investigation. Id. at 211. There was not testimony by any witness as to why Hallett thought production would increase remarkably.[3] Work testified that his fourteen year figure for extraction from the remainder was tied to the sixteen year estimate for extraction from the entire tract. Id. at 200.
 
 
 13
 Also, the experts' assumption that the extraction rate would be slower on the remainder than on the entire tract was unsupported. There was nothing to support Work's assumption that an average of only 629,000 tons per year could be extracted from the remainder while there could be an average of 750,000 tons extracted annually from the entire tract. Likewise, there was no support for Richards's assumption that 557,699 tons per year would be extracted from the remainder as opposed to 687,877 tons per year for the entire tract.
 
 
 14
 The lack of record support for the key assumptions of the rate of production mandates our finding of clearly erroneous. When determining just compensation with the income capitalization method, courts cannot engage in purely speculative assumptions. The Supreme Court has stated: "Elements affecting value that depend on events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration ...." Olson, 292 U.S. at 257, 54 S.Ct. at 709. This circuit and other courts have held that there must be objective support for future demand of the minerals to be extracted. Mills v. United States, 363 F.2d 78, 81 (8th Cir. 1966); Whitehurst, 337 F.2d at 771. See also Annot., 40 A.L.R. Fed. at 673-78. There also must be a showing of a reasonable probability that the land is physically adaptable for that use. United States v. 341.45 Acres of Land, 633 F.2d 108, 111 (8th Cir. 1980), cert. denied, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981). One circuit has held that there must be testimony to support a particular capitalization rate and the length of time a demand for the minerals would exist. United States v. 158.76 Acres of Land, 298 F.2d 559, 561 (7th Cir. 1962).
 
 
 15
 None of these cases expressly address the question of assumptions about the rate of production. However, the rationale behind the cases is that important assumptions used in determining just compensation must have support in the record. Appellees' witnesses assumed that the production rate would triple or quadruple. They assumed that the extraction rate from the remainder would be lower than the rate for the entire tract. The commission needed evidence to allow it to make such assumptions about business practices.
 
 
 16
 Polich and Hallett argue that even if the experts' use of the income capitalization method was faulty, the award should be sustained. They assert that Tony Polich's testimony as an expert witness that the taking decreased the value of the property by $500,000 supported the commission's award. He did not use the income capitalization method. We cannot affirm the award based on Mr. Polich's testimony. The original report of the commission gave little guidance as to how the commission arrived at its conclusion. It stated that the testimony of Government witnesses was discredited but it did not say whether it used the income capitalization method. It did not say how it arrived at the before- and after-taking figures. Commission reports are inadequate if they include only conclusory findings; the path followed by the commissioners in reaching the amount of the award should be distinctly marked. Merz, 376 U.S. at 198-99, 84 S.Ct. at 643. The district court remanded to the commission for additional findings. The court seemed to assume that the income capitalization approach was used. United States v. 47.14 Acres of Land, No. 78-407-1, slip op. at 2-3 (S.D.Ia. Oct. 29, 1980). The amended order of the commission was devoted exclusively to the income capitalization approach, the commission expressly adopted a fourteen-year period for extraction from the remainder, and the report did not suggest that any other approach was used. Therefore we believe that the commission used the income capitalization approach. If the commission report and the amended order were so vague that we could not tell whether the commission relied on the income capitalization approach or Polich's testimony, the reports would not meet the Merz standard, and a remand would be necessary.
 
 IV. Remedy
 
 17
 Rather than order a new trial outright, we believe that the option of a remittitur is appropriate in this case because it provides the possibility of a resolution which could conserve judicial resources and reduce legal costs for the parties. An appellate court can condition an affirmance on the appellee agreeing to a remittitur. 6A Moore's Federal Practice P 59.05(3), at 59-64-65; see Pemberton v. OvaTech, Inc., 669 F.2d 533, at 541-542 (8th Cir. 1982); Arnott v. American Oil Co., 609 F.2d 873, 889 (8th Cir. 1979), cert. denied, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980). The use of a remittitur as an alternative to a new trial is appropriate for complex, lengthy litigation. Kropp v. Ziebarth, 601 F.2d 1348, 1355 (8th Cir. 1979). It is not necessary that the remittitur be capable of precise calculation. Id. at 1354.
 
 
 18
 In the instant case, the commission recommendation was very close to the recommendation of the experts who used the income capitalization approach. Although we prefer comparable sales as a sounder and fairer guide to market value, we can use the formula the experts used, substituting more realistic production rates. Their assumptions as to the proper discount rate were very close. We can use Mr. Work's assumption as to the amount of materials available because the commission used that figure. United States v. 47.14 Acres of Land, No. 78-407-1, slip op. at 6-7 (S.D.Ia. Jan. 8, 1981), (amended ruling and order of commission). When the litigation has been lengthy and has already included one remand to the commission, we feel it appropriate to give appellees the option of terminating the litigation by accepting the remittitur. If appellees choose not to accept the remittitur, there will be a new trial.
 
 
 19
 At the appellate level it is difficult to calculate the ideal just compensation award.[4] Our approach will be to adopt a reasonable one, with the hope that lengthy litigation can be terminated. For purposes of the remittitur, we will use the income capitalization approach used by appellees' experts. However, we will assume the extraction rate for the remainder will be the same as the rate for the entire tract.
 
 
 20
 If Mr. Work had calculated the after-taking value by using the same rate of extraction he had used in his before-taking calculation, his after-taking value would have been $2,207,626. (The materials would be extracted in twelve, rather than fourteen, years.) This is $272,066 less than his before-taking value. Trial Transcript at 187. The commission award of $442,000 is $169,934 greater than the difference. We therefore order a remittitur in the amount of $169,934.
 
 
 21
 Even our $272,066 figure may be too high. Unfortunately, a more precise calculation is impossible because of the record before us. The Government must accept a large part of the responsibility for the state of the record in view of its failure to provide probative evidence to refute the calculations of appellees' witnesses and to establish value. See note 4, supra. If the Government thinks the award is too high, the Government should realize that it must accept responsibility for the record. If a retrial is had, we hope more probative evidence will be adduced.
 
 
 22
 If within twenty days from and after issuance of mandate herein appellees consent to a remittitur of $169,934, the judgment will stand affirmed as of the date of judgment from which appeal was taken, with interest and costs in the district court as provided by law. In the absence of such remittitur, the district court will vacate its judgment and award a new trial. In this court, each party shall bear its own costs.
 
 
 
 *
 The Honorable Earl R. Larson, Senior United States District Judge, District of Minnesota, sitting by designation
 
 
 [1]
 The methodology of the commission is not entirely clear, but the original commission report, the amended report, and the district court opinions allow us to conclude that the commission used the income capitalization approach. See pp. 727-728, infra
 
 
 [2]
 See note 1, supra
 
 
 [3]
 A geologist from Hallett testified that Hallett had planned to exhaust the reserves in twenty years from 1974 (sixteen years from the date of taking). He did not explain how Hallett would triple or quadruple production to meet that goal. Trial Transcript at 156
 
 
 [4]
 The Government has been of little help to the court in this case. The Government witnesses' recommendations of $25,000 and $65,000 are ridiculously low, even when applying the Government's standards. The Government has urged us to use the comparable sales approach and use the 212-acre tract near the subject property. That tract was sold for $4,700 per acre in 1976, while the Government's witnesses' estimates would result in an award of $770 or $2,000 per acre