Hans E. KIVI and Carol A. Kivi, individually and as husband and wife, Plaintiffs-Appellees,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, a foreign corporation, Defendant-Appellant.

No. 81–5687.

United States Court of Appeals, Eleventh Circuit.

Jan. 17, 1983.

Arthur J. Morburger, Alvin N. Weinstein, Miami, Fla., for defendant-appellant.

R. Fred Lewis, Arno Kutner, Miami, Fla., for plaintiffs-appellees.

Before RONEY and JOHNSON, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

In a non-jury trial,[1] the district court found that Nationwide had acted in bad faith in failing to settle the Kivis' claim against its insured for $15,000, a sum within its policy limits. It appeals from a judgment entered against it for $375,000. Nationwide contends that it did not have any reasonable offered opportunity to settle within its policy limits; that the attorney's fees awarded were grossly excessive; and that taxing as costs an expert witness fee of $1,000 was in error. We affirm the award of damages and attorney's fees and reverse the award of expert witness fees.

On May 2, 1977, Hans Kivi was in an automobile collision with a car owned by Ruisanchez and operated with permission by Rua. Nationwide insured Ruisanchez with a limit of $15,000 per person, and under the terms of the policy Rua was an omnibus insured. Rua was also insured by Hartford Accident & Indemnity Company for $10,000 with the proviso that if Rua had the permissive use of a non-owned vehicle the coverage would be excess over the coverage afforded under the owner's policy.

Kivi suffered severe injuries as a result of the accident and it is without dispute that it was a clear case of liability with tremendous damages.

Both the adjusters for Nationwide and Hartford immediately began an investigation of the accident and were convinced that the policy limits should be paid. Nevertheless, because of shifts of personnel in Nationwide and internal delays in obtaining Nationwide's "declaration sheet", disclosing the limits of its policy, which Hartford's adjuster required, no settlement with Kivi was effected. Mrs. Kivi finally became exasperated, and consulted with lawyer Kuvin about her inability to consummate a settlement with Nationwide and Hartford. On July 28, 1977, Kuvin sent a "bad faith" letter to Nationwide and Hartford. The letter to Nationwide made a demand on it as the primary carrier insuring Ruisanchez, for the full policy limit, and stated that the demand would remain open for a thirty day period, or until August 30, 1977, and that failure to settle within this time would be deemed bad faith and Kivi would seek excess damages.[2] The letter was received by Nationwide on July 29, 1977. The letter to Hartford was misaddressed and never delivered.

Having had no response from either insurer, on September 29, 1977, Kivi sent them complementary copies of the complaint for damages to be filed in the state court. On October 3, 1977 suit was filed. On October 5, 1977, Nationwide advised Ku-

---

1. There being diversity this case was removed from the Florida State Court.

2. The pertinent parts of the demand letter stated,

"... demand is hereby made upon Nationwide Insurance Company, as primary carrier, insuring the owner of the defendant's vehicle, Milagros Luisanchez [sic], for the full policy limits. It is my understanding that Nationwide had a $15,000/30,000, however I would request proof of this, in the way of a certified copy of the policy of insurance in question.

Demand for settlement shall remain open for a thirty-day period, or not later than August 30th, 1977. Should you fail to tender the full limits of your policy of insurance by

that time, you will leave us no other alternative than to file suit against your insured and said failure to settle within the time limitation will be deemed bad faith and we will seek excess damages against your company. I believe you have already been supplied with whatever medical bills we now presently have. I do have bills in my possession exceeding $18,000 and building. Mr. Kivi sustained multiple fractures to both legs as well as other internal injuries and will, of course, be left with a substantial disability. This case has a settlement value far in excess of $200,000 and with the limited amount of coverage available from your company, I believe settlement should be immediate."

vin that both companies were willing to pay their policy limits, but no agreement was reached. Between June 16, 1977 and October 5, 1977, internal memos between Nationwide's personnel concerning Nationwide's declaration sheet were exchanged and ultimately sent to Hartford, and Hartford's supervisor directed its adjuster to get substantiation from Nationwide of its coverage and payment. Nationwide's adjuster on three occasions attempted to reach Hartford's adjuster in September so that they could tender their policy limits together, but to no avail.

Ultimately the case was tried in state court and judgment was rendered for Hans Kivi for $350,000, and for Carol Kivi for $25,000. An amended judgment was subsequently entered reducing the amounts of the judgments against Nationwide and Hartford by the amounts of their respective policies.

The district court made findings of fact and conclusions of law and entered judgment against Nationwide for the amount of the judgment in excess of its policy limits, together with costs of $3,000 and attorney's fees of $70,000.

Nationwide does not attack the findings of fact made by the district court but does complain of the lack of findings concerning Hartford's dilatory activities. The district court found that since Hartford was the excess carrier its activities were not determinative of any issue of bad faith as it related to Nationwide. Had this evidence been considered, Nationwide argues, the only proper conclusion that could have been reached would have been that there was no offered opportunity for Nationwide to participate (within the deadline set by Kivi) in a reasonable policy limits settlement. Therefore, although there is evidence to support the findings, Nationwide complains that a mistake has been committed. In other words, we should reverse when the result does not reflect the truth and right of the case. *Armstrong Cork Company v. World Carpets, Inc.*, 597 F.2d 496 (5 Cir. 1979).

Nationwide's syllogism leads it into an erroneous premise upon which it builds its argument. It says that Nationwide could not settle within its policy limits without Hartford doing so, that Hartford was dilatory in doing so, therefore Nationwide had no offered opportunity to *participate*, within the deadline, in a reasonable policy limits settlement. But as the primary carrier Nationwide shouldered the responsibility of good faith negotiations to settle *its* claim, and not as a *participant* with Hartford in settling both claims. "The primary insurer assumes the duty of negotiating to settle in good faith by virtue of its control of its insureds' defense. *See generally Boston Old Colony Insurance Co. v. Gutierrez*, 386 So.2d 783. (Fla.1980). The excess insurer has no control." *General Accident, Fire & Life v. American Carrier Co.*, 390 So.2d 761 (Fla.App.1980). Nationwide simply cannot point its finger at Hartford as an excuse for not conducting "settlement negotiations in good faith to the interests of the insured [even] where those interests might be divergent from the interests of the insurance company." *Ging v. American Liberty Insurance Company*, 423 F.2d 115 (5 Cir.1970).

Nationwide next asserts that because the Kivis' offer did not provide for the release of the omnibus insured Rua or his excess carrier Hartford, and since the offer made no provision for releasing outstanding subrogation rights for medical benefits paid in excess of $5,000 and a hospital lien of $28,-000 (totalling more than the policy limits of both Nationwide and Hartford), there was no valid offer of a reasonable settlement opportunity triggering an excess damage claim.

We do not view Kivi's letter offer so narrowly, because it is not alone dispositive of the bad faith issue. "When an insured is not judgment proof [and the Kivis were not] or when an excess insurer exists, absence of an offer to settle within policy limits is not dispositive of the question of bad faith on the part of the primary insurer." *General Accident supra*, at 765. Nationwide's attempt to distinguish *General Accident* because it only applies to litigation

between a primary and excess carrier is specious because "[t]he excess carrier, to the extent of its limit of liability, stands in the shoes of the insured and assumes the rights as well as the responsibilities that the insured would normally have against the primary carrier." Id. at 765.

■ Nor are we persuaded that the offer for settlement was deficient because it did not specifically provide for the disposition of the omnibus insureds' claim, or for the release of subrogation rights and the hospital lien. It is significant that Nationwide never mentioned these items to the Kivis as an impediment to a settlement. Nor, indeed, were they a condition that could not have been easily satisfied. Had Nationwide agreed to settle for the policy limits, it could have done so subject to a disposition of Rua's liability as an omnibus insured if Hartford refused to settle as the excess carrier, and subject to the subrogation claim and hospital lien being settled, and thus have avoided any additional liability. *Government Employees Insurance Co. v. Grounds,* 311 So.2d 164 (Fla.App.1975).

■ We conclude that the district court's findings of fact and conclusions of law are fully supported by the evidence and the result reflects the truth and right of the case. The good faith duty of Nationwide obligated it "to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same...." *Boston Old Colony Insurance Co. v. Gutierrez,* 386 So.2d 783 (Fla.1980). Nationwide did none of these things. Moreover, the district court was correct in giving consideration to the evidence of negligence of Nationwide in determining whether it conducted settlement negotiations in good faith. *American Fidelity & Casualty Co. v. Greyhound Corp.,* 258

F.2d 709 (5 Cir.1958). *Thomas v. Lumbermen's Mutual Casualty Company,* 424 So. 2d 36 (Fla.App.1982).

■ We next turn to Nationwide's assertion that the award of attorney's fees in the amount of $70,000 was grossly excessive.[3] It was stipulated that the amount of fees should be determined by the court upon affidavits submitted by the parties. We pretermit the argument made on brief by Nationwide that the affidavits filed by the Kivis were insufficient because at oral argument it was conceded that the amount of the fee allowed would not be unreasonable if it was compensation for the entire course of the bad faith litigation. But Nationwide takes the position that since the assignment from Ruisanchez to the Kivis was executed one day prior to trial, and since the trial lasted two days, no legal services antedating this time were compensable, ergo an award of $70,000 was grossly excessive. We disagree.

Research by both parties and the court discloses no case law precisely on the issue here presented, but in our view it would run contrary to the purpose of the statute, to encourage insurers to pay valid claims without delay, to accept Nationwide's argument. An award of attorney's fees under Section 627.428(1) Fla.Stat. (1979) "is available ... to ... third parties who claim policy coverage by assignment from the insured." *Roberts v. Carter,* 350 So.2d 78, 79, (Fla.1977). To support this statement the court cited, for example, *All Ways Reliable Bldg. Maintenance, Inc. v. Moore,* 261 So.2d 131 (Fla. 1972). In that case the court, in upholding an implied contract of assignment, said "that the purpose of F.S. Section 627.0127 F.S.A. [the predecessor of the current statute] is to discourage contesting of valid claims of insureds against insurance companies. Under the broad interpretation which this Court has given Section 627.0127, it

---

**3.** §627.428(1) Fla.Stat. (1979) authorizes an award of attorney's fees to an insured if the insured prevails. The insured's assignees, the

Kivis, were entitled to recover the fees. *Liberty Mutual Insurance Company v. Davis,* 412 F.2d 475 (5 Cir.1969).

would appear to follow that an assignee of an insurance claim stands to all intents and purposes in the shoes of the insured and logically should be entitled to an attorney's fee when he sues and recovers on the claim." We find no reason or support for attaching significance to the date of the assignment which would, in this case, limit the fee award to only three days of work, thus eliminating from consideration the extensive preparation for trial that is documented in the record. *See Fred S. Conrad Construction Co. v. Exchange Bank,* 178 So.2d 217 (Fla.App.1965). A fee award for three days only would in no sense be reasonable, nor would it be consonant with the intent of the statute as a claim of policy coverage by assignment. *Roberts, supra.* We find no abuse of discretion in the fee fixed by the district court. *Wolf v. Frank,* 555 F.2d 1213 (1977).

■ Finally, Nationwide assails the district court's taxation of costs of expert witness fees as being in excess of the statutory per diem fee under 28 U.S.C. § 1821. Kivi counters that if the state law provides for an award of expert witness fees they may be assessed as costs by the district court in a diversity case. We need not labor long concerning this issue because it is well settled that expert witness fees cannot be assessed in excess of witness fees provided in § 1821.

In *Henkel v. Chicago, St. Paul, Minneapolis & Omaha Railway,* 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386 (1932), the Court, in dealing with expert witness fees, said, "Specific provision as to the amounts payable and taxable as witness fees was made by Congress ... Under these provisions, additional amounts paid as compensation, or fees, to expert witnesses cannot be allowed or taxed as costs in cases in federal courts." And what we said in *Green v. American Tobacco Company,* 304 F.2d 70 (5 Cir.1962) could hardly be clearer. "Under the present statute, 28 U.S.C.A. § 1821, the district court had no authority to tax costs for compensation to an expert witness in excess of the statutory attendance per day, mileage and subsistence allowances" (footnote omitted). Again, in *United States v. Kolesar,* 313 F.2d 835 (5 Cir.1963) this principle was firmly iterated, "... we have categorically determined that expert witness fees are not taxable under 28 U.S.C.A. § 1821."

In the light of these precedents we could not and did not recede from this principle in *Henning v. Lake Charles Harbor and Tunnel District,* 387 F.2d 264, 265 (5 Cir.1968) as suggested by Kivi. The case is readily distinguishable. After making an explicit reference to the *Green* decision we held that since, in a Louisiana condemnation case, the applicable Louisiana statute provided that the fee of experts used by the successful litigant may be taxed as costs, and since the Louisiana Supreme Court had said that this was necessary in order that the property owner may recover just compensation as required by the Louisiana Constitution, "this reimbursement, by whichever name called, or by whatever procedure handled in the state court system, is a substantive requirement of Louisiana law, a substantive right of the landowner, and binding upon the Court..." Obviously, the entitlement to expert witness fees under the Florida Statutes is not a substantive right. The district court was in error in taxing as costs the expert witness fees in excess of the fees statutorily provided in 28 U.S.C. § 1821.

We affirm the judgment of the district court awarding damages and attorney's fees, and reverse the judgment of the district court taxing as costs expert witness fees in excess of those provided in § 1821.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED for re-taxation of costs.