Julian G. NEMMERS, Appellant,

v.

CITY OF DUBUQUE, IOWA, an Iowa Municipal Corporation; and James E. Brady; D. Michael King; John L. Felderman; and Michael W. Pratt, Appellees.

No. 82–2411.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1983.

Decided Sept. 2, 1983.

Rehearing Denied Sept. 28, 1983.

Barry A. Lindahl, City Sol., Dubuque, Iowa, for appellees.

Alfred E. Hughes, Hughes, Trannel & Jacobs, Dubuque, Iowa, for appellant.

Before HEANEY, Circuit Judge, and FLOYD R. GIBSON and ROSENN *, Senior Circuit Judges.

HEANEY, Circuit Judge.

Julian G. Nemmers brought the present action in state court against the City of Dubuque, Iowa, and its individual council members. He contended that the defendants had rezoned property owned by him in violation of the United States and Iowa Constitutions. The case was removed to the United States District Court for the Northern District of Iowa, and that court denied Nemmers' relief after a two-day trial. Nemmers appeals. We hold that the defendants' actions violated Nemmers' rights under the Iowa Constitution and reverse.

I.

## BACKGROUND

In May of 1972, Julian G. Nemmers purchased a 135-acre tract of land in Dubuque County, Iowa, for $98,000. The tract was located approximately two miles outside the city limits of the City of Dubuque. It is bisected by Cedar Cross Road. This action concerns a fifty-five-acre portion of the tract which lies north of the road.

In 1976, the Dubuque City Council (City) and the electorate, in a referendum, approved the involuntary annexation of a portion of Dubuque County, which included Nemmers' property. A court challenge delayed the effective date of the annexation until June 1, 1979. Beginning in 1975,

* The HONORABLE MAX ROSENN, United States Senior Circuit Judge, Third Circuit, sitting by designation.

shortly before passage of the annexation proposal, City officials, including City Planner Daniel Dittemore, communicated to Nemmers a "receptiveness to industrial development of the [t]ract."

On April 5, 1976, the Dubuque County Board of Supervisors (County), on the recommendation of representatives of the City through its Planning and Zoning Commission, rezoned a substantial portion of Nemmers' property lying north of Cedar Cross Road from R–2 (residential) to M–1 (light industrial). The rezoning provided for a 400-foot "buffer zone" along the southeastern boundary of the land. On July 3, 1978, the County reduced the buffer zone to fifty feet and extended the M–1 industrial classification to the remainder of the previously excepted southeast corner of the tract.

Between mid-1976 and June 1, 1979, Nemmers expended substantial sums of money in the development of a light industrial park on the north tract. Nemmers donated the land needed to straighten and expand Cedar Cross Road adjacent to his property to the County and City, and he paid approximately $45,000 in excavation and grading expenses for the road project. The County and City shared in the remaining expenses, and the City installed a water main under the new public right-of-way. The improvements were completed in June of 1978, leaving a widened Cedar Cross Road bisecting Nemmers' property which significantly narrowed at points west and east of that property.[1] After completion of the road, Nemmers had approximately eight acres on the west end of his property, fronting Cedar Cross Road on the south, graded flat to prepare for a seventeen-lot industrial park proposed for that site. The grading cost over $40,000. Nemmers also spent over $50,000 in additional development costs, including the preparation of preliminary plats, engineering and environmental studies, and legal fees. In all, he expended approximately $140,000 between April of 1976 and July of 1979.

Nemmers filed a preliminary plat for his tract, designated Cedar Ridge Industrial Park, with the City in December of 1978. The plat called for use of the property as an industrial district. The City Planning and Zoning Commission approved the preliminary plat on January 17, 1979, and the County approved the plat on March 12, 1979.

On June 1, 1979, the involuntary annexation by the City became effective. All of the annexed property, including Nemmers' tract, was automatically zoned AG (agricultural) by operation of a municipal ordinance, pending a determination of permanent City zoning. On July 9, 1979, the City temporarily rezoned Nemmers' land for the most part consistent with the prior County zoning. On October 6, 1980, the City changed its mind and enacted a permanent ordinance rezoning as R–3 (residential) approximately twenty-five acres of Nemmers' land north of Cedar Cross Road, with the remaining approximately thirty acres rezoned AG. The R–3 portion of Nemmers' land approximated the area which he had planned to develop for industrial use under the County's prior M–1 zoning.

On November 21, 1980, Nemmers filed this action in Iowa District Court for Dubuque County against the City and its individual council members. He alleged that the defendants violated his constitutional rights and the provisions of 42 U.S.C. § 1983 (Supp. V 1981) by refusing to rezone his property L–1 (the City's equivalent to M–1 zoning by the County) to the extent of the light industrial zoning granted by the County prior to the City's involuntary annexation. In December of 1980, the defendants removed the action to the United States District Court for the Northern District of Iowa under 28 U.S.C. § 1441 (1976), as a controversy arising under the Constitution and laws of the United States.

By order of February 13, 1981, amended on July 2, 1981, the district court dismissed Count II of Nemmers' complaint, which

---

**1.** Several hundred feet of Cedar Cross Road, immediately west of Nemmers' property, apparently had been widened previously in order to improve access to a small industrial or commercial development on the north side of the road and a natural gas company on the south.

sought damages, as to the individual defendants. *See Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607, 611–614 (8th Cir. 1980). The remaining issues were tried to the court. On September 23, 1982, the court issued its findings of fact and conclusions of law. It held that the defendants did not act arbitrarily or capriciously in rezoning Nemmers' property R–3 and AG, and that Nemmers had no "vested right" to L–1 rezoning by the City for any portion of his land. Nemmers appeals from this judgment.

## II.

## MERITS

Nemmers raises several federal and state constitutional claims in opposition to the City's rezoning of his property. They may be divided into three categories: (1) the federal due process claim, based upon the fourteenth amendment to the United States Constitution; (2) the federal takings claim, based upon the fifth and fourteenth amendments to the United States Constitution; and (3) the vested rights claim, based upon Iowa constitutional law, Iowa Const. art. 1, §§ 9 & 18. We hold that Nemmers had a vested right to continued light industrial zoning on that portion of his land which was zoned M–1 by the County on April 5, 1976, as a matter of state law. In view of this holding, we find it unnecessary to reach the federal due process and takings claims. *See Mayor of Philadelphia v. Educational Equality League,* 415 U.S. 605, 623–624, 94 S.Ct. 1323, 1334–35, 39 L.Ed.2d 630 (1974); *Siler v. Louisville & Nashville Railroad,* 213 U.S. 175, 190–193, 29 S.Ct. 451, 454–55, 53 L.Ed. 753 (1909). *See also* 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3567, at 454 (1975).

 We are mindful that a federal appellate court should give great weight to a district court's opinion regarding the local law of the state in which it sits. We are not bound by such an opinion, however, if we are firmly convinced that the court misapplied state law. *See R.W. Murray Co. v. Shatterproof Glass Corp.,* 697 F.2d 818, 821

(8th Cir.1983) (and cases cited therein). We have such a case before us. In our view, the Iowa Supreme Court would find that Nemmers had a vested right to L–1 zoning under state law.

The vested rights theory developed, at least in part, out of state court interpretations of the due process and takings clauses in the Iowa Constitution. *See* Iowa Const. art. 1, §§ 9 & 18; *Kasparek v. Johnson County Board of Health,* 288 N.W.2d 511, 522 (Iowa 1980) (en banc) (McCormick, J., dissenting). Thus, the theory is part of the law of Iowa and we are bound to apply it to the facts of the present case in the same manner as would the courts of that state.

The Iowa Supreme Court has described the theory as follows:

The vested rights concept is a part of the balancing of the respective legitimate interests of the private property owner against those of the general public, keeping in mind that legitimate and valuable expenditures in connection with the use of an affected tract or in a business conducted on it, before imposition of the regulation, may create a property right which cannot be arbitrarily interfered with or taken away without just compensation.

*Kasparek v. Johnson County Board of Health, supra,* 288 N.W.2d at 518 (citations omitted).

The determination of whether a property owner has acquired a vested right is necessarily an ad hoc inquiry. As stated in an early vested rights case, "The question is whether prior to the effective date and hour of the zoning ordinance [the owners] had performed such work and made such commitments on the tract of land that they had acquired a vested interest, permitting them to complete the project." *Board of Supervisors of Scott County v. Paaske,* 250 Iowa 1293, 98 N.W.2d 827, 829 (1959). In answering this question,

[i]t is impossible to fix a definite percentage of the total cost which establishes vested rights and applies to all cases. It depends on the type of the project, its location, ultimate cost, and principally the

amount accomplished under conformity. Each case must be decided on its own merits, taking these elements into consideration.

*Id.,* 98 N.W.2d at 831. *Accord, Stone v. City of Wilton,* 331 N.W.2d 398, 403–404 (Iowa 1983); *Keller v. City of Council Bluffs, Iowa,* 246 Iowa 202, 66 N.W.2d 113, 118–119 (1954). Given the importance of the facts of each case to the resolution of a vested rights claim, we compare the facts of several Iowa vested rights cases with the facts in the present case.

In *Board of Supervisors of Scott County v. Paaske, supra,* the Iowa Supreme Court held that a developer had a vested right to finish five homes, even though construction of the homes would violate a new zoning ordinance restricting the number of residences which could be built on the land in question. The developer had excavated four basements, placed a septic tank for the fifth, and entered into contracts for the building of the five foundations prior to the effective date of the new zoning law. *Board of Supervisors of Scott County v. Paaske, supra,* 98 N.W.2d at 828–829, 831. More recently, the Iowa Supreme Court found a vested right which could not be taken away without just compensation where the developers and owners of certain lots had spent $13,000 "in the development and improvement of their subdivisions" prior to regulations which would bar septic tank permits for tracts of land as small as those owned by these parties. *Kasparek v. Johnson County Board of Health, supra,* 288 N.W.2d at 518; *id.* at 520.

The same court just this year declined to find a vested right based on the plaintiffs' expenditure of approximately $7,900 to obtain federal financing and prepare plans and plats for a multi-family development prohibited by the subsequent rezoning of plaintiffs' land to single-family use. *Stone v. City of Wilton, supra,* 331 N.W.2d at 400, 403. On the facts before it, the *Stone* court held:

> [The plaintiffs' actions prior to rezoning were] only the most preliminary steps towards construction. The architect's plans were not the working blueprints of a contractor. * * * No construction bids were sought and no construction contracts were let. No materials were placed on the site and no construction or earth work was started. We agree with the trial court that plaintiffs' efforts and expenditures prior to rezoning were not so substantial as to create vested rights in the completion of the housing project on that particular tract of land in Wilton.

*Id.* at 404.

We turn now to the facts relevant to Nemmers' claim of a vested right to L–1 zoning in the instant case.

The facts which favor a vested right finding herein are as follows: Nemmers began investigating the potential for light industrial development on his land north of Cedar Cross Road over three years before the effective date of the City's annexation. Daniel Dittemore, City Planner from 1972 to 1978, and other City employees indicated a receptiveness to light industrial development on Nemmers' land at various times between 1975 and October of 1980. Dittemore and others recommended that the County zone much of Nemmers' land M–1 in 1976. The City officially joined with Nemmers and the County in the widening of Cedar Cross Road across Nemmers' property in 1977 and 1978. The improvements to the road were of the type which would accommodate an increased volume of traffic in the vicinity of Nemmers' property. With this encouragement from City officials and participation by the City in the improvement of Cedar Cross Road, Nemmers' expended approximately $140,000 in beginning the light industrial development of his property. A large amount of this money went to the grading of approximately eight acres necessary for a planned seventeen-lot industrial park. The grading was substantially completed on the effective date of the City's annexation.

Balanced against Nemmers' legitimate expectations regarding the industrial development of his land based on the above facts, we must consider the City's interests in

denying the continuation of light industrial zoning on the tract. These interests are said to be that light industrial zoning on Nemmers' land will create traffic and road problems in the residential areas in the vicinity, that the elevation of Nemmers' land will make the industrial development on it visible to surrounding residents, and that the City will lose a buffer zone between the industrial and commercial developments already established on Cedar Cross Road and the growing residential developments to the south and east. While we do not question the legitimacy of these governmental interests, we do have questions as to the weight they should be given.

Initially, it must be noted that City Planner Dittemore must have been aware of the traffic implications of light industrial development on Nemmers' property at the time he recommended that the property be zoned M–1 by the County in 1976. Secondly, the City participated with Nemmers and the County in widening Cedar Cross Road during the period from 1977 through 1978. Finally, the statistics regarding the flow of traffic are not impressive.

A traffic report prepared for the City by a consulting engineering firm stated, "[T]he industrial development [of Nemmers' land] would *probably* generate more vehicle trips than the residential development [of that property]." Hocking Deposition, Exhibit 1, at 2 (emphasis added). The report also indicated that ten percent of the traffic generated during peak traffic hours *may* be trucks following the industrial development of Nemmers' land. *Id.* at 4. With respect to road maintenance necessary for further industrial development, the record indicates that a one-lane bridge on Cedar Cross Road would have to be widened, one traffic signal retimed, and two additional traffic signals installed. *Id.* at 6–7. Again, there is no evidence in the record indicating that the City and its Planning and Zoning Commission were not aware of these factors at the time the Commission recommended M–1 zoning by the County and when the City

participated with Nemmers and the County in broadening Cedar Cross Road.

The City's contentions with respect to the need for a buffer zone are equally unpersuasive. Nemmers' proposed development is screened from surrounding residential areas by a stand of large trees, a creek, and a railroad track. The only open area is a small section on the southeast end of Nemmers' tract, but the County required a 400-foot buffer zone at that point in zoning the land M–1 on April 5, 1976. *See* Appendix to Opinion, *infra*, at 1201. Moreover, Nemmers' proposed development is consistent with other industrial or commercial developments immediately west and northwest of his land.

On balance, then, we think it clear that Nemmers' case for a vested right to light industrial zoning is at least as strong as those cases in which the Iowa Supreme Court has granted relief, *see, e.g., Kasparek v. Johnson County Board of Health, supra,* 288 N.W.2d at 518; *Board of Supervisors of Scott County v. Paaske, supra,* 98 N.W.2d at 828–829, and considerably stronger than those cases in which it denied relief. For example, the grading work and road improvements paid for by Nemmers while his land was still zoned M–1 by the County is the type of "earth work" absent from the facts in *Stone v. City of Wilton, supra,* 331 N.W.2d at 404. Furthermore, the diminution in the value of Nemmers' land zoned residential, combined with the loss of expenditures made in developing Cedar Cross Road and in grading his land for industrial use, are evidence of actual harm and detrimental reliance which was absent in *Keller v. City of Council Bluffs, Iowa, supra,* 66 N.W.2d at 119.

█ The City raises two defensive objections to our interpretation of Iowa law. First, it contends that the annexation vote in 1976 placed de facto restrictions on the County's jurisdiction to rezone Nemmers' land M–1 after that vote. This contention is unpersuasive because City officials, particularly through the City Planning and

Zoning Commission, recommended that the County grant Nemmers an M–1 rezoning of his property in 1976.[2] Moreover, Iowa law establishes that a county's zoning authority remains extant until annexation by a city is complete. *Town of Grimes v. Board of Adjustment, Polk County, Iowa,* 243 N.W.2d 625, 629 (Iowa 1976).

■ The City's second, and somewhat related, contention is that Nemmers' knowledge of impending annexation by the City prevented his acquisition of a vested right based on expenditures made after the 1976 vote authorizing the annexation. We disagree. A similar situation arose in *Kasparek v. Johnson County Board of Health, supra.* In that case, regulations proposed by the County Board of Health, and later adopted by the County Board of Supervisors, improperly interfered with the vested rights possessed by the complaining landowners and developers. The Board of Health apparently had proposed the offending regulations prior to the expenditures made by the plaintiffs. Nonetheless, the Iowa Supreme Court found interference with the plaintiffs' vested rights and stated, "Whatever may be inferred as to [the plaintiffs'] knowledge of the Board of Health's position on the regulation prior to the approval of the plats by the board of supervisors is irrelevant, since the Board's proposed regulation was of no effect until adopted by the board of supervisors." *Kasparek v. Johnson County Board of Health, supra,* 288 N.W.2d at 518 (citation omitted).

■ In like manner, we believe that the Iowa Supreme Court would find that Nemmers' knowledge regarding the City's annexation proceedings was irrelevant to the legitimacy of the expenditures he made while his land was zoned M–1 by the County. Besides being the law of Iowa, this conclusion reflects sound policy. An owner should not be forced to delay indefinitely development on land in the County pending the outcome of court challenges by other parties to the City's involuntary annexation, paying taxes on that land to the County all the while.

In sum, we reverse the district court's holding that Nemmers had no vested right to L–1 zoning on any portion of his land, and hold that he acquired such a right extending to that part of his land zoned M–1 by the County on April 5, 1976.[3] We remand for a determination of appropriate relief for the uncompensated taking of that right by the City. That relief may be declaratory, injunctive, compensatory, or a combination thereof.[4] Should the district court award declaratory and injunctive relief to Nemmers for the uncompensated taking of this vested right, it is free to require Nemmers to plant trees or to provide an otherwise suitable screen along the 400-foot buffer zone on the southeast boundary to Nemmers' tract in a manner which will protect the City's legitimate interest in having a protective divider between Nemmers' light industrial development and the existing residential areas surrounding that development. The City, of

---

2. In addition, the City Planning and Zoning Commission issued an "Urban Growth Forecast/Annexation Feasibility Analysis" in May of 1976 which outlined the City's overall zoning plans for the areas to be annexed. A map in that forecast showed Nemmers' property potentially zoned for industrial use.

3. The 400-foot buffer zone along the exposed southeast border to Nemmers' property will serve to protect the City's legitimate interest in avoiding a direct clash between the industrial development on the northwest end of Cedar Cross Road and the residential development to the southeast. Nemmers acquired no vested right to light industrial zoning within that buffer, even though the County reduced it to fifty

feet in 1978, because his expenditures to improve the road were made while the entire 400 feet were included in the buffer zone, and his grading expenditures through 1979 only affected the northwest end of his land.

4. The case went to trial against the individual defendants only as to Count I, which requested declaratory and injunctive relief. The district court dismissed Count II, the damages count, as to these defendants based on an absolute legislative immunity from liability for damages under 42 U.S.C. § 1983 (Supp. V 1981). Nemmers did not appeal from that dismissal, therefore compensatory relief cannot be granted as against any of the individual defendants.

course, will retain whatever legal authority it otherwise has in controlling the development of light industrial parks within its jurisdiction.

For the foregoing reasons, the decision of the district court is reversed and the case remanded. Costs will be taxed to the appellees.

APPENDIX TO OPINION
(From Plaintiff's Exhibit 8A)