764 F.2d 502
 2 Fed.R.Serv.3d 16
 Julian G. NEMMERS, Appellant,
v.
CITY OF DUBUQUE, an Iowa Municipal Corporation, James E.
Brady, D. Michael King, John L. Felderman and
Michael W. Pratt, Appellees.
Julian G. NEMMERS, Appellee,
v.
CITY OF DUBUQUE, an Iowa Municipal Corp.; and James E.
Brady; Michael King; John L. Felderman; Michael
W. Pratt, Appellants.
 Nos. 84-1888, 84-1912.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 14, 1985.
Decided June 11, 1985.
As Amended Aug. 29, 1985.
 
 Alfred E. Hughes, Dubuque, Iowa, for Julian Nemmers.
 Barry Lindahl, Dubuque, Iowa, for the City of Dubuque.
 Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 In 1980, Julian G. Nemmers sued the City of Dubuque for its uncompensated taking of his land when it was rezoned from light industrial to a residential classification. When the case was first appealed to this Court, we reversed the district court's dismissal of the case, held that Nemmers had a vested right in the zoned status of his land, and remanded the case to the district court to determine the proper relief for Nemmers. Nemmers v. City of Dubuque, 716 F.2d 1194, 1200 (8th Cir.1983). On remand, the district court declined to award damages after it determined that, although Nemmers had proved that he was damaged, the insufficiency of the evidence made any damage award uncertain and speculative. The district court also taxed Nemmers's expert witness fees to the city. Nemmers and the city appeal respectively from these judgments of the district court.
 
 
 2
 I. BACKGROUND.
 
 
 3
 Although most of the facts relevant to this appeal are set forth in our previous opinion, Nemmers, 716 F.2d at 1195-97, some review and supplementation of these facts is necessary to put this opinion in context. Nemmers originally purchased a 135-acre tract of land outside Dubuque, fifty-five acres of which was subsequently annexed involuntarily by the city. Pending finalization of the annexation, Nemmers invested heavily in the development of a light industrial park on the land. When the annexation became final, however, the city zoned it AG (agricultural) and then R-3 (residential), contrary to Nemmers's expectation. Nemmers filed suit in state court, alleging that the rezoning was a taking of private property without just compensation which violated his constitutional rights. When the case was removed to and tried before the federal district court, the district court found that the defendants had not acted arbitrarily or capriciously and that Nemmers had no vested right to the L-1 (light industrial) zoning classification of his land. On appeal, we reversed this finding, determining, among other things, that Nemmers had a vested right in the light industrial zoned status of his property and that this expectation was compensable. Id. at 1197-99.
 
 
 4
 On remand, the district court held a hearing to determine whether Nemmers was entitled to monetary damages for the loss of the light industrial use of his land between the date of the taking (October 22, 1980) and the date of the district court's entry of judgment (April 30, 1984).[1] Nemmers argued that he was entitled to damages equal to the interest that would have accrued at the rate of 15% on his estimate of the property's fair market value ($510,000) as of the date of the taking. The city resisted this damage figure because the figure presumed a total loss of the property for the period of the taking and because Nemmers's damage estimate was speculative and uncertain. The city retained its own expert who approved the 15% rate of interest and concluded that the estimated value of the difference in zoning was $141,450. The district court reviewed the damage estimates submitted by the parties' experts and refused to award damages because it believed both estimates were methodologically flawed to such an extent that any damages would be speculative. The district court awarded Nemmers his claimed attorneys' fees, however, and invited Nemmers to itemize his expenses for his expert witness. Nemmers subsequently itemized his expert's fees and received $11,901 based on the district court's determination that "the expert's testimony was indispensable as crucial to the issue decided."
 
 
 5
 II. JUST COMPENSATION FOR THE TEMPORARY TAKING OF NEMMERS'S LAND.
 
 
 6
 The fifth amendment to the United States Constitution provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The object of just compensation is to return property owners to the status quo ex ante, making them whole through the award of proper damages. This Court has declared that the owner of the taken property
 
 
 7
 is entitled to its value at the time of the taking plus an amount sufficient "to produce the present full equivalent of that value paid contemporaneously with the taking * * *." The goal is to place the owner in as good position pecuniarily as if the property had not been taken * * *. Interest at a reasonable rate is a suitable measure for determination of the amount to be added.
 
 
 8
 Antoine v. United States, 710 F.2d 477, 479-80 (8th Cir.1983) (citations omitted).
 
 
 9
 In determining the proper measure of just compensation, we look to the market value of the parcel of land. See United States v. 47.14 Acres of Land, More or Less, 674 F.2d 722, 725 (8th Cir.1984). In the case of a temporary taking of a laundry which was compensated for by a jury award based on hypothetical rental value, the Supreme Court approved the notion of a "transferable value" or market value in formulating damages: "As opposed to such personal and variant standards as value to the particular owner whose property has been taken, this transferable value has an external validity which makes it a fair measure of public obligation to compensate the loss incurred by an owner as a result of the taking * * *." Kimball Laundry Co. v. United States, 338 U.S. 1, 5, 69 S.Ct. 1434, 1437, 93 L.Ed. 1765 (1945). Market value should be determined as of the date of the taking: for a temporary taking, the government is responsible for compensating the owner for the interim during which it effected the taking. San Diego Gas & Electric Co. v. San Diego, 450 U.S. 621, 659, 101 S.Ct. 1287, 1307, 67 L.Ed.2d 551 (1981) (Brennan, J., dissenting).[2] Thus, the proper method for calculating the damages in this case is to compute the return over three and one-half years at an interest rate of 15% on the difference between the property's fair market value when zoned L-1 and its fair market value when zoned R-3.
 
 
 10
 In determining market value, we have approved the use of evidence of comparable sales as the "best evidence" of damages on the rationale that comparable sales "on the whole reflect the principle of a willing seller and a willing buyer concluding arms-length negotiations." 47.14 Acres of Land, 674 F.2d at 726. Although the degree of comparability between two given parcels of land is not always easy to determine, comparability can be regarded as "a function of the similarity of the characteristics of the properties, their geographic proximity, and the recency of sale, or contract for sale." United States v. 428.02 Acres of Land, 687 F.2d 266, 271 (8th Cir.1982). Because exact comparability is difficult to achieve (short of a recent sale of the same property), the relative importance of the sale of comparable property is reflected in the weight it is given by the trier of fact in the particular proceeding. See id. Perhaps most importantly, "[w]hen there are no comparable sales, market value must be estimated." 47.14 Acres of Land, 674 F.2d at 725.
 
 
 11
 Nemmers's expert testified that the difference between the residential and industrial value of the property was $510,000; the city's expert calculated the estimated value of the difference in zoning at $141,450. The district court rejected Nemmers's valuation because that estimate was based on a multiple regression analysis which considered only a limited sample of dissimilar properties. The district court also rejected the city's valuation because that estimate did not provide appraisals for the property in its unimproved state. Accordingly, the district court declined to award damages because of the "uncertainty and speculative nature" of these estimates.
 
 
 12
 We cannot say that the district court clearly erred in rejecting Nemmers's estimate of the diminution of the property's value, despite his expert's attempts to account for bias in his methodology. We do believe, however, that the district court should have accepted, at a minimum, the city's estimate of diminished value of $141,450. The city's expert submitted a report which outlined his method of calculating this figure and he testified at trial that he continued to believe that that figure was the correct result. In addition, we note that the city's expert's report accepted and relied on the interest rate of 15% proposed by Nemmers. Although we recognize that the report of the city's expert is not without limitations,[3] we believe it was error to regard the defendant's minimal estimate as so inherently uncertain and speculative as to deny damages entirely.
 
 
 13
 Accordingly, the district court shall enter an order awarding damages of $89,812.35, which reflects a 15% return compounded annually on a diminution in the property's value of $141,450.
 
 
 14
 III. EXPERT WITNESS'S FEES.
 
 
 15
 The district court authorized payment of plaintiff's cost in this case upon submission of an itemized bill of costs. Nemmers v. City of Dubuque, No. C 80-1026, slip op. at 14 (N.D.Iowa April 20, 1984). The clerk of the court taxed plaintiff's costs to the defendant in the amount of $11,901. The city appealed this determination, and the district court affirmed the award of expert fees, finding that "the testimony of plaintiff's expert was indispensable to the determination that plaintiff's property had been 'taken'." Nemmers v. City of Dubuque, No. C 80-1026, slip op. at p. 3 (N.D.Iowa, June 12, 1984).
 
 
 16
 We find no error in this taxation of expert witness costs to the city. Although the traditional rule under 28 U.S.C. Sec. 1821 has been that expert fees are not recoverable beyond the statutory allowance for attendance, mileage and subsistence, see Kivi v. Nationwide Mutual Insurance Co., 695 F.2d 1285, 1289 (11th Cir.1983), this Court has seen fit to award expert fees under Fed.R.Civ.P. 54(d), "when the expert's testimony was crucial to the issues decided." Coleman v. City of Omaha, 714 F.2d 804, 809 (8th Cir.1983).
 
 
 17
 In Paschall v. Kansas City Star Co., 695 F.2d 322, 338-39 (8th Cir.1982), vacated on other grounds, 727 F.2d 692, 704 (8th Cir.1984), this Court approved the Third Circuit's approach, by which "[a] district court should * * * carefully scrutinize the prevailing party's bill of costs in order to assure that any award will compensate those expenditures necessary to the litigation," id. at 339, citing Roberts v. S.S. Kyriakoula D. Lemos, 651 F.2d 201, 206 (3d Cir.1981). Again, we find this procedure to be proper under Rule 54(d) where the expert testimony is crucial to the resolution of the disputed issue.[4]
 
 
 18
 In accordance with this standard, we conclude that the district court properly found that Nemmers's appraiser's report was crucial to the resolution of the question of the taking dispute and of the issue of just compensation. Although the district court did not grant the relief requested in the report, it carefully considered the improvement costs and the "as is" value, and it made explicit findings regarding the importance of the report to its decision. From our review of the record, we also find that the district court's requirement of an itemized bill of costs and its affirmance of the clerk's taxation of costs reflects the proper kind of close scrutiny in this kind of case. Therefore, we affirm the taxation of costs ordered by the district court.
 
 
 19
 Accordingly, the judgment of the district court is affirmed as it relates to the bill of costs, but reversed on the damages issue. We remand to the district court for entry of an order awarding Nemmers $89,812.35 in damages plus interest from the date of the commencement of the action pursuant to Iowa Code Section 535.3 and $11,901 in expert witness fees.
 
 
 20
 FAGG, Circuit Judge, dissenting in part.
 
 
 21
 I cannot agree with the result reached in Part III of the court's opinion. First, I would adhere to the rule followed by the majority of federal courts and disallow Nemmers' expert witness fees over and above the statutory allowances provided in 28 U.S.C. Sec. 1821. See Ramos v. Lamm, 713 F.2d 546, 559 (10th Cir.1983); Kivi v. Nationwide Mutual Insurance Co., 695 F.2d 1285, 1289 (11th Cir.1983); Paschall v. Kansas City Star Co., 695 F.2d 322, 343 n. 9 (8th Cir.1982) (Henley, J., dissenting); Quy v. Air America, Inc., 667 F.2d 1059, 1066-68 (D.C.Cir.1981); Illinois v. Sangamo Construction Co., 657 F.2d 855, 864-67 (7th Cir.1981); Bosse v. Litton Unit Handling Systems, 646 F.2d 689, 695 (1st Cir.1981); Berkey Photo, Inc. v. Eastman Kodak Co., 603 F.2d 263, 309 n. 75 (2d Cir.1979), cert. denied, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980); Goodwin Brothers Leasing, Inc. v. Citizens Bank, 587 F.2d 730, 735 (5th Cir.1979). "Under these provisions [the predecessor of 28 U.S.C. Sec. 1821], additional amounts paid as compensation, or fees, to expert witnesses cannot be allowed or taxed as costs in cases in the federal courts." Henkel v. Chicago, St. Paul, Minneapolis & Omaha Ry., 284 U.S. 444, 446, 52 S.Ct. 223, 224, 76 L.Ed. 386 (1932). Second, when the result is viewed in the context of the rule embraced by the court, it seems incongruous to call Nemmers' expert's testimony "crucial" when the district court rejected the expert's analysis because "it suffers from some notable defects," characterized the expert's appraisal as "unreliable," and concluded that the expert's valuation "should be disregarded."
 
 
 
 [1]
 The parties had stipulated that the city would rezone the affected parcel of land to L-1 upon entry of judgment by the district court
 
 
 [2]
 Several circuits have adopted the procedures for "taking" cases prescribed in Justice Brennan's dissent. See e.g., Hamilton Bank v. Williamson County Regional Planning Commission, 729 F.2d 402, 408 (6th Cir.), cert. granted, --- U.S. ----, 105 S.Ct. 80, 83 L.Ed.2d 28 (1984); Martino v. Santa Clara Valley Water District, 703 F.2d 1141, 1148 (9th Cir.1983). The majority declined to reach the taking issue in San Diego Gas because it found there was no appellate jurisdiction because the case was not appealable under the final judgment rule. San Diego Gas & Electric v. San Diego, 450 U.S. 621, 630, 101 S.Ct. 1287, 1292, 67 L.Ed.2d 551 (1981). Because the dissent represented the views of four justices and because Justice Rehnquist agreed "with much of what is said" in the dissent, id. at 633, 101 S.Ct. at 1294, we find the method proposed in the dissent to have considerable persuasive appeal
 
 
 [3]
 For instance, we are concerned about the city's expert's assumption that only a part of the property could be sold over five years at a price of $500,000. We also question his high ($1.18 per square foot) estimate of the value of residential property when juxtaposed against his comment that "[t]he current multiple family market in Dubuque is non-existent." Despite these limitations, however, we do not believe the city's estimate of the estimated diminution in value should be disregarded
 
 
 [4]
 Although the Court en banc reversed on other grounds the panel opinion in Paschall on which we rely, this does not undercut the logic of the panel opinion on expert fees. That part of the opinion was vacated because the plaintiffs were no longer prevailing parties, but the en banc opinion did not expressly discard the reasoning enumerated there, nor did it reject the well-reasoned precedents on which it was based