833 F.2d 267
 56 USLW 2335
 Joseph WHEELER, Clarice Wheeler, Cliff Development
Corporation, and S & S Builders, Inc., etc.,
Plaintiffs-Appellees, Cross-Appellants,
v.
CITY OF PLEASANT GROVE, etc., Defendant-Appellant, Cross-Appellee,
Bobby Patrick, etc., et al., Defendants.
 No. 86-7661.
 United States Court of Appeals, Eleventh Circuit.
 Dec. 1, 1987.
 
 Thomas N. Crawford, Jr., Cooper, Mitch & Crawford, Birmingham, Ala., for City of Pleasant Grove, etc.
 Donald H. Brockway, Jr., Corretti & Newsom, Birmingham, Ala., for Joseph Wheeler, Clarice Wheeler and Cliff Development Corp.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT and ANDERSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.
 TJOFLAT, Circuit Judge:
 
 
 1
 This appeal marks the third time this case has been before us. The present appeal is limited to the issue of whether the district court applied the correct measure of damages.
 
 I.
 
 2
 In 1978, Cliff Development Corp. (Cliff Development) contracted with Joseph and Clarice Wheeler (the Wheelers) to buy a parcel of land in Pleasant Grove, Alabama for the sum of $160,000. Cliff Development planned to build a 120-unit apartment complex on the site. Pursuant to the contract, Cliff Development made a downpayment of $1,000 to the Wheelers. After finding that the proposed land use complied with applicable zoning ordinances, the Pleasant Grove Planning Commission issued a building permit. Cliff Development paid the city $6,165 for the permit and commenced work in preparation for construction.
 
 
 3
 Strong community opposition to the proposed development soon arose. Two mass public meetings were held, followed by a referendum in which a majority of the citizens of Pleasant Grove expressed opposition to construction of the apartments. In the wake of the referendum, the City Council in July 1978 passed Ordinance No. 216, which outlawed construction of apartment complexes in Pleasant Grove.
 
 
 4
 Cliff Development and the Wheelers brought suit in the district court against the City of Pleasant Grove and seven city officials, alleging violations of the fifth and fourteenth amendments.[1] They sought damages as well as declaratory and injunctive relief.
 
 
 5
 In November 1979, sixteen months after the City Council passed Ordinance No. 216, the district court ruled that the ordinance was unconstitutional as applied to the plaintiffs. The court held that the ordinance had been enacted and implemented arbitrarily and capriciously, was confiscatory in nature, and bore no substantial relationship to any legitimate police power interest. The court permanently enjoined the defendants from enforcing the ordinance against the plaintiffs, but it refused to grant the plaintiffs' request for monetary relief. The court based its refusal to award damages on its determination that all the defendants were shielded by a qualified immunity defense.
 
 
 6
 On appeal, a panel of the former Fifth Circuit held that Ordinance No. 216 had no rational purpose and affirmed the district court's ruling that the application of the ordinance to the plaintiffs was unconstitutional. The court of appeals reversed the district court's ruling on damages, however, holding that the good faith defense was not available to municipalities in section 1983 actions. Wheeler v. City of Pleasant Grove, 664 F.2d 99 (5th Cir. Unit B Dec. 1981), cert. denied, 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982) (hereinafter Wheeler I ). The court of appeals remanded the case for a determination of damages.
 
 
 7
 On remand, the district court again refused to award any damages. This time, it concluded that the implementation of Ordinance No. 216 had not proximately caused any compensable injury to the plaintiffs. On appeal, this court reversed. We observed that the prior panel, in affirming the district court's finding of liability, had "at least by necessary implication[ ] decided that the unconstitutional conduct upon which that finding was predicated had damaged plaintiffs." Wheeler v. City of Pleasant Grove, 746 F.2d 1437, 1441 (11th Cir.1984) (hereinafter Wheeler II ). We concluded that the district court, in refusing to award any damages, had violated the law of the case. Accordingly, we once again remanded the case for a determination of the amount of damages sustained by the plaintiffs.
 
 
 8
 At the hearing that followed, the district court considered the Wheelers' damages claims and Cliff Development's damages claims separately. The Wheelers claimed that they would have sold their property for $160,000 to Cliff Development but for the enactment of Ordinance No. 216. They sought damages in the amount of the interest they would have received on the proceeds of the sale over the sixteen months that the ordinance was in effect, less rental income derived from the property over the same period. The Wheelers also sought damages for mental anguish they allegedly suffered as a result of the lost sale.
 
 
 9
 Cliff Development claimed that it had suffered damages separate and apart from those claimed by the Wheelers. First, it claimed that it was entitled to compensation for the expenditures--in excess of $19,000--it had made in preparation for construction before the enactment of Ordinance No. 216. Second, it claimed that it had suffered damages to the extent that building costs and temporary and permanent financing costs had increased over the sixteen months that the ordinance was in effect. Third, it claimed it was entitled to the profits it would have made had construction proceeded on schedule. Fourth, it sought damages for injury to its business reputation. Finally, it sought punitive damages.
 
 
 10
 After hearing the testimony of several real estate agents and considering the parties' post-hearing briefs, the district judge awarded the Wheelers $1. In concluding that the Wheelers were entitled only to nominal damages, the judge emphasized that they had made no attempt to sell the property after the court enjoined enforcement of the ordinance in November 1979. The judge found that the post-November 1979 value of the property as a site for apartments was $50,000 greater than the sum Cliff Development had originally contracted to pay. He further found that the contract between the Wheelers and Cliff Development was unenforceable for want of an adequate description of the subject property. He concluded that since the Wheelers could now sell the property on the market at a sizeable profit, they had suffered no actual injury.
 
 
 11
 With respect to Cliff Development, in contrast, the district judge was able to discern a compensable injury. In the judge's view, however, Cliff Development could collect only for the increases in construction costs and temporary financing costs. Based on the representation by Cliff Development that it planned to proceed with construction of the apartments, the judge refused to award damages for out-of-pocket expenditures. The judge also refused to award damages for lost profits, finding that such profits were purely speculative. Further, he found that the methodologies urged at trial for estimating increases in permanent financing costs were too speculative to support a damages award; he emphasized the unpredictability of interest rates and the possibility that Cliff Development could obtain refinancing at lower rates in the future. In addition, he refused to award any damages for injury to Cliff Development's business reputation, finding the proof adduced at trial inadequate to establish such injury. Finally, he denied the plaintiffs' request for punitive damages, concluding that the City was immune from such liability.[2]
 
 
 12
 The City of Pleasant Grove appealed, and the Wheelers and Cliff Development cross-appealed. Because we conclude that the district court applied an incorrect measure of damages, we vacate its decision and remand for further proceedings consistent with this opinion.
 
 II.
 
 13
 The issue of liability is settled in this case. In Wheeler I a panel of the former Fifth Circuit held that the City of Pleasant Grove had engaged in a taking when it applied Ordinance No. 216 against the plaintiffs. In Wheeler II we held that a necessary implication of the Wheeler I holding was that the plaintiffs were entitled to compensation for the injury they sustained as a result of the temporary taking.[3]
 
 
 14
 At the time Wheeler I and Wheeler II were decided, the Supreme Court had not yet ruled on the issue of whether a landowner could recover damages for a temporary regulatory taking--that is, a taking that is ultimately invalidated by a court. Several courts had taken the position that an injunction prohibiting the enforcement of the unconstitutional ordinance was a complete remedy, and had refused to award damages for injuries sustained during the period when the ordinance was in effect. The Supreme Court, however, has since affirmed our position in Wheeler I and Wheeler II by holding that the Constitution requires compensation for a temporary regulatory taking. See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, --- U.S. ----, 107 S.Ct. 2378, 2387-88, 96 L.Ed.2d 250 (1987). In this appeal, we confront the difficult issue of how to calculate the compensation due when such a taking has occurred.
 
 
 15
 It is well settled that in determining the compensation due for a taking, "the question is, What has the owner lost?" Boston Chamber of Commerce v. City of Boston, 217 U.S. 189, 195, 30 S.Ct. 459, 460, 54 L.Ed. 725 (1910). The owner's loss is measured by the extent to which governmental action has deprived him of an interest in property. See United States v. General Motors Corp., 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945). The value of that interest, in turn, is determined by isolating it as a component of the overall fair market value of the affected property. See Kimball Laundry Co. v. United States, 338 U.S. 1, 7, 69 S.Ct. 1434, 1438, 93 L.Ed. 1765 (1949).
 
 
 16
 In the case of a temporary regulatory taking, the landowner's loss takes the form of an injury to the property's potential for producing income or an expected profit. See generally 7 P. Rohan, Zoning and Land Use Controls Sec. 52A.03 (1986 & Supp. 1987). The landowner's compensable interest, therefore, is the return on the portion of fair market value that is lost as a result of the regulatory restriction. Accordingly, the landowner should be awarded the market rate return computed over the period of the temporary taking on the difference between the property's fair market value without the regulatory restriction and its fair market value with the restriction.[4] See Nemmers v. City of Dubuque, 764 F.2d 502, 505 (8th Cir.1985). Under this approach, the landowner recovers what he lost. To award any affected party additional compensation for lost profits or increased costs of development would be to award double recovery: the relevant fair market values by definition reflect a market estimation of future profits and development costs with respect to the particular property at issue.
 
 
 17
 The district court misperceived the nature of the task before it. It incorrectly viewed the dispute as involving two separate compensable injuries--one sustained by the Wheelers and one sustained by Cliff Development. When the government has engaged in a taking, the Constitution requires that compensation be paid to the owner of the property taken. On remand, therefore, the district court must determine the relative interests of the parties in the subject property and allocate the total damages accordingly.
 
 
 18
 Assuming that the Wheelers had a total interest in the property, the district court plainly applied an incorrect measure of damages. The court concluded that the Wheelers had suffered no compensable loss because the property's value after the lifting of the regulatory restriction was greater than its value before the restriction came into effect. The district court's analysis fails to account for their loss as measured by the formula we set forth above, that is, the loss in income-producing potential suffered over the sixteen months that Ordinance No. 216 was in effect.[5] On remand, the district court must determine the amount of that loss.
 
 III.
 
 19
 We find no reason to disturb the district court's refusal to award damages for emotional distress and injury to business reputation. Assuming that such damages would otherwise be proper in a case of this kind, we conclude that the district court's finding that the plaintiffs failed to establish such damages was not clearly erroneous. Likewise, we do not disturb the district court's disposition of the punitive damages claim. The district court correctly ruled that the City of Pleasant Grove, the sole defendant remaining in this case,[6] is immune from liability for punitive damages under City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).
 
 IV.
 
 20
 To summarize, we vacate the district court's ruling insofar as it pertains to the calculation and allocation of compensation due as a result of the temporary taking, and remand the case for further proceedings consistent with this opinion. We affirm the district court's ruling with respect to punitive damages and damages based on emotional distress and injury to business reputation.
 
 
 21
 AFFIRMED in part, VACATED in part, and REMANDED.
 
 
 
 [1]
 The action was brought under 42 U.S.C. Secs. 1983, 1985, and 28 U.S.C. Secs. 2201-2202 (1982). In their complaint as amended, the plaintiffs alleged that the defendants had deprived them of their property without due process, had taken their property without just compensation, and had acted arbitrarily and capriciously in adopting the challenged ordinance
 
 
 [2]
 The City of Pleasant Grove is the only defendant remaining in the action. Pursuant to the agreement of the parties, the district court in October 1985 dismissed the complaint against the individual city officials insofar as it pertained to the plaintiffs' claims for damages
 
 
 [3]
 A "taking" as a ground for a suit against a governmental entity can be based on different constitutional provisions. The fifth amendment provides "nor shall private property be taken for public use, without just compensation." This provision is applied to the States through the fourteenth amendment. See Chicago, B. & Q.R.R. Co. v. Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). Technically, the fifth amendment's just compensation clause is not applicable where there has been no "public use." Such may be the case where, as here, the land use regulation that effected the taking was not enacted in furtherance of the public health, safety, morals, or general welfare. The affected landowner may nevertheless have a damage cause of action under section 1983 since the taking may violate his fourteenth amendment rights to due process. See Hernandez v. City of Lafayette, 643 F.2d 1188, 1200 n. 26 (5th Cir. Unit A May 1981), cert. denied, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982). Regardless of which constitutional provision a taking falls under, the measure of damages to which the aggrieved landowner is entitled is the same
 
 
 [4]
 That is, the price that a willing buyer with all relevant information--including knowledge of the land use restriction--would pay a willing seller
 
 
 [5]
 In the analogous context of temporary physical takings, the Supreme Court has rejected the measure of compensation used by the district court--that is, the difference between the market value of the owner's interest in the property before its taking and the market value on the date of its return. See Kimball Laundry Co. v. United States, 338 U.S. 1, 7, 69 S.Ct. 1434, 1438, 93 L.Ed. 1765 (1949). Because the market value of the property often would not have decreased, the Court observed, this approach would frequently result in no compensation for the owner, despite the identifiable loss he suffered over the period of the temporary taking. The same concern moves us to reject that approach in the context of a temporary regulatory taking
 
 
 [6]
 See supra note 2