## CIRCUIT COURT OF FAIRFAX COUNTY

Thompson Associates

v.

Board of Supervisors of
Fairfax County et al.

June 28, 1988

Case No. (Chancery) 103227

By JUDGE THOMAS A. FORTKORT

### A. *Factual Background*

The case at bar is a dispute between Fairfax County and a developer, Roland Thompson, over the building of a service road. Thompson seeks a declaratory judgment that the County's requirement that he build a service road is unlawful. He further seeks return of $125,000 seized by the County who cashed a letter of credit posted as security for a performance bond. Thompson has also filed a 42 U.S.C. 1983[1] Civil Rights action to recover attorneys fees and other damages resulting from the County's refusal to waive the service road requirement. Thompson finally seeks an injunction forcing the County to issue

---

[1] Petitioner has stated a cause of action citing violation of the 14th amendment and demanding attorney fees under Section 42 U.S.C. 1988, a corollary section to 1983 but does not cite 42 U.S.C. 1983 in his bill of complaint. The label "42 U.S.C. 1983" as used in this memorandum is the court's.

residential use permits upon the completion of phase III of Thompson's development.

In the mid 1970's Thompson sought a certificate of need to build a large life care facility on thirty-two acres of land east of Fairfax Circle. Thompson was granted a special exemption to build the life care facility known as the Virginian. Thompson submitted a site plan with a foot print of the facility. His presentation did not include a service road.

The County staff advised Thompson that his site plan would not be approved without a service road. Thompson protested the service road because it was unconnected to any other property and would become a parking lot for commuters. The County wrote Thompson advising that the site plan would require a service road.

Thompson submitted a site plan with the service road included. A bond was prepared to cover the public improvements phase of the project as required by County Ordinance. The bond requires a line item estimate of the costs of public improvements and was prepared in this instance. A gas line was in the way of the service road and Thompson refused to bond the moving of the gas line. An item of cost for locating the pipe was prepared as part of the bond estimate but no cost was estimated for the moving of the gas line. Thompson said the bond estimater, Mr. White, said they would work out the gas line moving by negotiating between Thompson, the County and the gas company. The County advised Thompson in a subsequent letter that it would not move the gas line at County expense.

Thompson continued to protest the service road. The County staff early on was favorable as to a waiver of the service road requirement. Phase I and phase II of the Virginian were given residential occupancy permits although the service road remained unbuilt. Ordinarily, County policy would not allow these permits to be issued while work items remained outstanding.

Thompson and the County continued to discuss the service road. Sometime in 1984, Thompson reached an agreement with the County to substitute a pedestrian trail for the service road. Later, the County reneged on this agreement and demanded the service road be built. The County demanded a new performance bond with current cost estimates be posted by Thompson. When Thompson filed

this suit last summer, the County cashed the Letter of Credit which had expired several years ago by its own terms.

The County argues that the agreement to build a pedestrian trail was not binding upon it, because the agreement was not executed by an official with sufficient authority to bind the County. The Court agrees that the pedestrian trail agreement is not binding upon the County.

The County argues that the Petitioner is barred from suit by its failure to notify the Board of its intent to sue. A prior judge has ruled that no claims of the petitioners were barred, and following the law of the case in this ruling, the Court heard both the declaratory judgment action and the 42 U.S.C. 1983 action.

There was considerable testimony concerning the various roles County officials played in the negotiations over the service road. There was also discussion over whether the service road was desirable from a traffic safety point of view. While the Court can conclude that the installation of the service road in the context of the present use of the property in question and the adjacent properties is not a particularly wise decision, that conclusion is not determinative of the issues in this case.

## B. *The Injunction*

The issue in this case is the interpretation of two Virginia Supreme Court decisions which offer different parameters for the resolution of cases involving proffers made by contractors in zoning applications.

In the 1984 case of *Cupp v. Board of Sup'rs of Fairfax County*, 227 Va. 580, 318 S.E.2d 407 (1984), the Supreme Court held that the County could not require the building of a service road as a condition of a favorable zoning ruling. In *Cupp* at page 594, the Supreme Court held:

> We find nothing in this language which empowers the Board to impose road dedication and construction requirements which it claimed it was empowered to impose. In Virginia, we adhere to Dillon's Rule and a corollary thereto, that "the powers of supervisors are fixed by statute and are limited to those conferred expressly or by neces-

sary implication." *Hylton v. Prince William Co.*, 220 Va. 435, 440, 258 S.E.2d 577, 581 (1979). The right to grant special exemptions "under suitable regulations and safeguards" does not imply the power to require a citizen to turn land over to the county and build roads for the benefit of the public.

A second case, *Board of County Supervisors of Prince William v. Sie-Gray Developers, Inc.*, 230 Va. 24, 334 S.E.2d 542 (1985), decided that a developer would be bound by its voluntary proffer, if it contracted to do so. This case was decided by a five to two majority with a vigorous dissent. In *Sie-Gray*, the original developer, Hall's, bid for a zoning change was denied by the Board of Supervisors when the developer refused to make certain road improvements. A successor entity, Sie-Gray, made certain proffers and successfully received the re-zoning. Later, Sie-Gray did not build according to its proffers and challenged the County's right to demand the proffers after the County sued on the performance bonds. The majority of the Court held at page 30:

> Because under *Hylton* it was not within the County's power to require these improvements as a condition for subdivision approval, appellees urged that the agreement, even if voluntarily executed by Sie-Gray, was ultra vires and, therefore, void and unenforceable. We do not reach the merits of this argument however. To allow appellees to assert a defense of ultra vires would contravene the general principle that "one who makes a contract with a municipality is estopped to assert it was ultra vires, when it is sought to be enforced against him."

Based upon this case, it is the County's position that once the developer, Thompson entered into an agreement with the County, he is estopped to assert the County's act was ultra vires.

The County's position is untenable. No doubt the passage quoted above appears to make that ruling. But *Sie-Gray* must be read in connection with *Hylton, Cupp*

and *Rowe*.[2] Those cases were approved in *Sie-Gray*, not modified or overruled. *Sie-Gray* deals with the proposition that a developer may voluntarily agree to make certain public improvements as part of his development plan. Once he voluntarily makes an agreement to build public improvements, he is bound by his agreement. The difference in the positions between the majority in *Sie-Gray* and the dissent is whether the action can be said to be voluntary where the applicant knows he will not receive approval of his plan without the proffers. The silence of the developer *Sie-Gray* was fatal to his case. The court decision merely asserts that contracts which go beyond the powers of local governing bodies to enact will nevertheless be enforced if they are voluntarily entered into by the parties.

In this case, Thompson complained of the Service Road at every turn. True, his complaints were that the road was unnecessary and a hazard and was being required to benefit an adjacent property rather than that the Board had no power to require the improvement. Nevertheless, the County was not unaware that the developer was opposed to building the road as was the case in *Sie-Gray*, but Thompson was in fact told to build the road or face disapproval of his development plan. The signing of a contract by Thompson with the County does not erase his opportunity for relief. To hold otherwise, would be to sanction unconstitutional behavior by local governments. The holding in *Rowe* is clear and unambiguous. The Fairfax County Ordinance requiring service roads, similar to the James City

[2] Board of Supervisors James City County v. Rowe, 216 Va. 128, 216 S.E.2d 199 (1975). The holding in Rowe was as follows: "The precise question before us is whether a local governing body has the power to enact a zoning ordinance that requires individual landowners, as a condition to the right to develop their parcels, to dedicate a portion of their fee for the purpose of providing a road, the need for which is substantially generated by public traffic demands rather than by the proposed development. Our enabling statutes delegate no such power. Moreover, Article I and II of the constitution of Virginia expressly and unequivocally provide 'that the General Assembly shall not pass any law . . . whereby private property shall be taken or damaged for public uses, without just compensation.' The dedication requirement of 8A offends that constitutional guarantee, and we hold that it is invalid."

County Ordinance found unconstitutional by the Supreme Court, remains undisturbed to this day. To hold that the County may continue to coerce public improvements and then claim that the illegality of the action is cured by a contract, would render the holdings of our Supreme Court meaningless. The judiciary, purely and simply is the arbitrator of constitutionality. When the State's highest tribunal rules on an issue, its teachings ought to be followed or changed by one of the constitutionally approved methods.

The service road requirement in this case is as unconstitutional as that in *Cupp*. The petitioner is entitled to be relieved of this requirement. He is entitled to return of the bond money seized by the County.

### C. *Civil Rights Action*

In *Nollan v. California Coastal Commission*, 483 U.S. ---, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987), the Supreme Court in a five to four decision held that requiring a grant of public easement across a beachfront section of private property, as a condition of granting a permit to build a house on the property without just compensation is a violation of the Fifth Amendment. The Court discusses several instances where the police power of the state may override the Fifth Amendment prohibition against the taking of private property without just compensation. The test used in *Nollan* is to balance the taking of private property against the power of the state to further legitimate state interests under its police power. The Court equates the setting of a condition upon a use of the property with a denial of a use permit for the purpose of this analysis. In *Nollan*, the Court found that the "condition substituted for the prohibition utterly fails to further the end advanced as justification for the prohibition." Thus, the Court finds a "taking" using an analysis more familiar to an equal protection argument.

The test used here is obviously the lowest form of constitutional scrutiny under which most state statutes normally pass constitutional muster. The Brennan-Marshall dissent in *Nollan* disagrees with the majority's assessment as to whether action taken promotes a legitimate state purpose. Justice Stevens and Justice Blackmun complain

that *Nollan* illustrates the uncertainties created by the Court's decision in *First English Evangelical Lutheran Church v. Los Angeles County*, 482 U.S. ---, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987), in which for the first time imposes pecuniary liability for a temporary taking of property.

The law, as it stands, would not classify a state action as an "unconstitutional taking" where the state action meets the minimum scrutiny standard of promoting a legitimate state interest.

The County, however, does not have the benefit of this analysis. Since in a prior case the highest Court in this state has already determined that a similar County action was unconstitutional, the County and its officials have nothing to shield them from a civil rights action by a developer. If the County's action is "per se" unconstitutional or beyond its powers under the Dillon rule, no amount of benefit to the public can make its action a constitutional "taking." The County in the opinion of this Court is liable for pecuniary damages.

Once liability attaches, the measure of damages comes into play. That measure is discussed by the 11th Circuit Court of Appeals in the case of *Wheeler v. City of Pleasant Grove*, 833 F.2d 267 (11th Cir. 1987). In *Wheeler* the court discusses damages to property under 42 U.S.C. 1983. In that case, the court stated the measure for a temporary taking as the value of the difference between the property's fair market value without the regulation restriction and its fair market value with the restrictions. The party is *not* entitled to increased cost of development.

In the case at bar, no compensable damages have been proven. Even if Thompson built the road, he would not be able to recover its cost. Presumably having prevailed under 42 U.S.C. 1983, he could recover attorney fees under a like provision in the Federal Code 42 U.S.C. 1988. It is the opinion of the Court that the entire Section 1983 action, while applicable to this case, is barred by Petitioner's failure to give notice to the County pursuant to Section 15.1-554 of the Virginia Code. *See Felder v. Casey et al.*, 208 N.W.2d 19 (Wis. 1987). Section 42 U.S.C. 1983 claims are to be viewed as analogous to claims for personal injuries sounding in tort, according to the Supreme Court decision in *Wilson v. Garcia*, 471 U.S. 261,

105 S. Ct. 1938, 85 L. Ed. 254 (1985). Using that rationale, this action must follow the same procedural limitations as all other torts and in this instance must comply with Section 15.1-554 of the Virginia Code. There are cases that hold federal procedural rules apply even to actions in State Courts so this area of the law is not settled. The requirement notice, particularly in land use cases, is not burdensome, and the Court is confident most courts would apply state rules of procedure that are general in nature such as § 15.1-554 rather than applicable only to civil rights or federal actions brought in state courts.

In conclusion, the Court finds the County's requirement of a service road under the circumstances of this case to be unconstitutional. The petitioner is entitled to return of his bond money, to an injunction prohibiting the County from denying occupancy permits based upon Thompson's failure to build the service road. While the petitioner is entitled to recover damages pursuant to 42 U.S.C. 1983, he has only shown attorney fees as recoverable damages, and his right to recover damages is barred by his failure to comply with Section 15.1-554 of the Virginia Code.