GREEN, OLIVER L., Senior Judge,
Dissenting.
I respectfully dissent. The theory of the majority regarding the proper measure of damages is based on Wheeler v. City of Pleasant Grove, 833 F.2d 267 (11th *273 Cir.1987). The facts of Wheeler are as follows:
In 1978, Cliff Development Corp. (Cliff Development) contracted with Joseph and Clarice Wheeler (the "Wheelers) to buy a parcel of land in Pleasant Grove, Alabama[,] for the sum of $160,000. Cliff Development planned to build a 120-unit apartment complex on the site. Pursuant to the contract, Cliff Development made a downpayment of $1,000 to the Wheelers. After finding that the proposed land use complied with applicable zoning ordinances, the Pleasant Grove Planning Commission issued a budding permit. ■ Cliff Development paid the city $6,165 for the permit and commenced work in preparation for construction.
Strong community opposition to the proposed development soon arose. Two mass public meetings were held, followed by a referendum in which a majority of the citizens of Pleasant Grove expressed opposition to construction of the apartments. In the wake of the referendum, the City Council in July 1978 passed Ordinance No. 216, which outlawed construction of apartment complexes in Pleasant Grove.
Cliff Development and the Wheelers brought suit in the district court against the City of Pleasant Grove and seven city officials, alleging violations of the fifth and fourteenth amendments. They sought damages as well as declaratory and injunctive relief.
838 F.2d at 268 (footnote omitted).
The court in Wheeler was dealing with the claim of owners of undeveloped land. In the instant case, we have a lost income claim founded on an existing business. If the apartment complexes in Wheeler had already been built and leased when their use was barred by rezoning, the situation would have been similar to the one at hand. In such a circumstance, it is hard to imagine that the Eleventh Circuit would not have based the measure of damages on the existing leases, which could no longer be honored.
The Wheeler court determined that the measure of the landowners’ damages was the “market rate return computed over the period of the temporary taking on the difference between the property’s fair market value without the regulatory restriction and its fair market value with the restriction.” Id. at 271. The court concluded that this method incorporated lost rental profits. Any loss under the apartment leases was purely speculative since the apartments had not been built. Thus, the market rate return theory makes sense in a situation such as Wheeler where the land was undeveloped.
At trial, the City of Tampa requested, based on Wheeler, that the jury be instructed that the measure of Mr. Redner’s damages “should be the market rate of return, computed over the period of the temporary taking, on the difference between the property’s fair market value with wet zoning and its fair market value without the wet zoning at the time of the taking.” Using this theory, the City’s appraisal expert, Lee Pallardy, testified that Mr. Redner’s damages for eight years’ deprivation amounted to the sum of $10,700. The City objected to the trial court’s instruction to the jury that the measure of damages “is the loss of income producing potential” over the period of the wrongful rezoning.
The majority agrees that the market rate of return is not the proper method of calculating damages in the instant case. However, the majority holds that the measure of damages is not “the amount of all income lost while the property sat vacant for a period of time” but, rather, the “reduction in the income producing potential.” This is, in essence, the same measure of damages as the “loss in income producing *274 potential” instruction given by the trial court. The majority then comes up with an artificial method for determining the reduction in the income producing potential.
On appeal, the City argues that the trial court’s “loss of income producing potential” instruction was error and that the trial court should have given the market rate of return instruction. The City did not argue that the evidence was insufficient to support the damages awarded under the “loss of income producing potential” theory but, rather, that this was the wrong measure of damages. The City did not make the argument that the theory for calculating the reduction in income producing potential enunciated by the majority was the correct measure of damages under the instruction given by the trial court. Any such argument was waived by the City, and I disagree with the majority’s providing relief to the City and reversing and remanding for a new trial on damages based on a theory that was never raised.
I fail to see that the majority’s theory for calculating damages is authorized by Wheeler. The theory appears to be over-elaborate where, in this case, the one-year lease with a five-year option for the property in question was introduced into evidence. The lessee backed out of the lease upon learning that the wet zoning had been revoked. The lessee, Richard Cal-derone, testified that the bar that had been operating on the property was a very successful enterprise. He indicated that he would have acted on the opportunity to run it.
In Department of Agriculture & Consumer Services v. Mid-Florida Growers, Inc., 570 So.2d 892, 895 (Fla.1990) (an inverse condemnation suit and not a regulatory taking as is the case here), the supreme court, in regard to the methodology for just compensation, had this to say: “As this Court stated in Dade County v. General Waterworks Corp., 267 So.2d 633, 639 (Fla.1972), ‘[t]he conclusion to be drawn is simply that the proper valuation method or methods for any given case are inextricably bound up with the particular circumstances of the case.’ ”
Mr. Redner testified that he was unable to successfully rent the property and that he eventually converted it to offices. For my part, given the particular circumstances of this case, I feel that the “loss of income producing potential” can be calculated by the amount lost on the lease over the time period in question minus the amount by which Mr. Redner was able to minimize his damages by renting the property. It is not unreasonable to assume that the lessee would have taken up the lease option since he testified that the bar business was successful. Mr. Redner also had to pay for the maintenance and upkeep of the property that would have been paid for by the lessee.
In sum, because the theory upon which the majority granted relief was not argued by the City and because the majority’s theory of damages is not appropriate, I would affirm.